UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN PAROT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CLARIVATE PLC, JERRE STEAD, and RICHARD HANKS, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Kevin Parot ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Clarivate Plc ("Clarivate" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Clarivate securities between February 26, 2021 and December 27, 2021, both dates inclusive (the "Class Period"),

seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Clarivate is an information services and analytics company.  On October 1, 2020, the Company acquired 100% of the assets, liabilities, and equity interests of CPA Global, an intellectual property software and tech-enabled services company.

3.     Before and after its acquisition of CPA Global, Clarivate assured investors of the core effectiveness of its financial controls and procedures.  For example, even after Clarivate disclosed in April 2021 that it had a material weakness in its financial controls related to accounting for certain warrants issued in connection with a 2019 business combination, the Company specifically cabined the scope of that material weakness to its accounting for the warrants at issue, while assuring investors that the remainder of its controls and procedures were effective.

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Clarivate maintained defective disclosure controls and procedures as a result of a material weakness in its internal control over financial reporting; (ii) the foregoing material weakness was not limited to how the Company accounted for warrants; (iii) as a result, Clarivate failed to properly account for an equity plan included in its acquisition of CPA Global; (iv) accordingly, the Company was reasonably likely to restate one or more of its previously issued financial statements following its acquisition of CPA Global; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.      On December 27, 2021, Clarivate disclosed in an SEC filing that "[o]n December 22, 2021, Clarivate . . . concluded that the financial statements previously issued as of and for the year ended December 31, 2020, and the quarterly periods ended March 31, 2021, June 30, 2021, and September 30, 2021, should no longer be relied upon because of an error in such financial statements[.]"  Specifically, Clarivate reported that "[t]he error relates to the treatment under U.S. generally accepted accounting principles ('GAAP') relating to an equity plan included in the CPA Global business combination which was consummated on October 1, 2020 ('the CPA Global Transaction')[,]" and that "[i]n the affected financial statements, certain awards made by CPA Global under its equity plan were incorrectly included as part of the acquisition accounting for the CPA Global Transaction."

6.      Later that same day, an hour before market trading hours closed, *StreetInsider.com* published an article on Clarivate entitled "Clarivate Plc (CLVT) PT Lowered to $29 at Stifel on Accounting Error".  That article reported, in relevant part, that "Stifel analyst Shlomo Rosenbaum lowered the price target on Clarivate . . . to $29.00 (from $32.00)" following the Company's disclosure that "it discovered an accounting error related to equity awards that CPA Global had issued under its equity plan."  That article quoted the Stifel analyst, who commented, in relevant part, that "[t]he timing of this discovery is poor, less than a month after the prior CFO left, though we are told that the items are not related, and this error was discovered in the last week[,]" and that "[t]his error should not impact Revenue, Adjusted EBITDA or Adjusted FCF [free cash flow], but it is likely to impact the GAAP EBITDA and earnings, and the reported FCF."

7.      Following Clarivate's SEC filing and the *StreetInsider.com* article, Clarivate's ordinary share price fell $0.16 per share, or 0.65%, to close at $24.58 per share on December 27, 2021.  As the market continued to digest the SEC filing and *StreetInsider.com* article, Clarivate's

ordinary share price fell an additional $1.70 per share, or 6.92%, to close at $22.88 per share on December 28, 2021—a total decline of $1.86 per share, or 7.52%, over two consecutive trading days.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

11.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Pursuant to the Company's most recent quarterly report on Form 10-Q, as of October 25, 2021, Clarivate had 639,776,102 of its ordinary shares outstanding.  Clarivate's ordinary shares trade on the New York Stock Exchange ("NYSE").  Accordingly, there are presumably hundreds, if not thousands, of investors in Clarivate ordinary shares located within the U.S., some of whom undoubtedly reside in this Judicial District.

12.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

13.     Plaintiff, as set forth in the attached Certification, acquired Clarivate securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.     Defendant Clarivate is organized under the laws of Jersey, Channel Islands, with principal executive offices located at 70 St. Mary Axe, London EC3A 8BE, United Kingdom.  The Company's ordinary shares and 5.25% Series A mandatory convertible preferred shares trade in an efficient market on the NYSE under the ticker symbols "CLVT" and "CLVT PR A", respectively.

15.     Defendant Jerre Stead ("Stead") has served as Clarivate's Executive Chairman and Chief Executive Officer at all relevant times.

16.     Defendant Richard Hanks ("Hanks") has served as Clarivate's Chief Financial Officer at all relevant times.

17.     Defendants Stead and Hanks are sometimes referred to herein as the "Individual Defendants."

18.     The Individual Defendants possessed the power and authority to control the contents of Clarivate's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Clarivate's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Clarivate, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then

materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

19.      Clarivate and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.      Clarivate is an information services and analytics company.  On October 1, 2020, the Company acquired 100% of the assets, liabilities, and equity interests of CPA Global, an intellectual property software and tech-enabled services company, from Redtop Holdings Limited, a portfolio company of Leonard Green & Partners, L.P.

21.      Before and after its acquisition of CPA Global, Clarivate assured investors of the core effectiveness of its financial controls and procedures.  For example, even after Clarivate disclosed in April 2021 that it had a material weakness in its financial controls related to accounting for certain warrants issued in connection with a 2019 business combination, the Company specifically cabined the scope of that material weakness to its accounting for the warrants at issue, while assuring investors that the remainder of its controls and procedures were effective.

### Materially False and Misleading Statements Issued During the Class Period

22.      The Class Period begins on February 26, 2021, when Clarivate filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2020 (the "2020 10-K").  For the year, the 2020 10-K reported income from operations of $2.805 million, benefit for income taxes of $2.799 million, a net loss of $106.31 million, basic and diluted loss per share of $0.25, total current assets of $1.328

billion, other non-current assets of $47.944 million, total current liabilities of $1.569 billion, other

non-current liabilities of $67.722 million, and total shareholders' equity of $9.593 billion.

23.     Additionally, the 2020 10-K stated the following, in relevant part, regarding

Clarivate's acquisition of CPA Global:

> On October 1, 2020, we acquired 100% of the assets, liabilities and equity interests
> of CPA Global, a global leader in intellectual property software and tech-enabled
> services. Clarivate acquired all of the outstanding shares of CPA Global in a cash
> and stock transaction. The aggregate consideration in connection with the closing
> of the CPA Global acquisition was $8,740,989, net of $98,610 cash acquired,
> including an equity hold back consideration of $46,485. The aggregate
> consideration was composed of (i) $6,761,515 from the issuance of up to
> 218,183,778 ordinary shares to Redtop Holdings Limited, a portfolio company of
> Leonard Green & Partners, L.P., representing approximately 35% *pro forma* fully
> diluted ownership of Clarivate and (ii) approximately $2,078,084 in cash to fund
> the repayment of CPA Global's parent company outstanding debt of $2,055,822
> and related interest swap termination fee of $22,262. Of the 218,306,663 ordinary
> shares issuable in the acquisition, Clarivate issued 216,683,778 ordinary shares as
> of October 1, 2020.

24.     With respect to Clarivate's disclosure controls and procedures, the 2020 10-K

assured investors that "[o]ur management, with the participation of [the Individual Defendants],

evaluated the effectiveness of our disclosure controls and procedures as of December 31, 2020[,]"

and that, "[b]ased on the evaluation of our disclosure controls and procedures as of December 31,

2020, [the Individual Defendants] concluded that, as of such date, ***our disclosure controls and***

***procedures were effective***" (emphasis added).

25.     The 2020 10-K also assured investors that "Clarivate's management assessed the

effectiveness of Clarivate's internal control over financial reporting as of December 31, 2020";

that "[i]n making this assessment, management used the criteria set forth by the Committee of

Sponsoring Organizations of the Treadway Commission (COSO) in Internal Control — Integrated

Framework (2013)"; that "[b]ased on management's assessment and those criteria, ***management***

***has concluded that Clarivate's internal control over financial reporting was effective as of***

*December 31, 2020*" (emphasis added); that "[d]uring the fourth quarter of 2020, excluding [*inter alia*] CPA Global . . . there was no change in Clarivate's internal control over financial reporting that materially affected, or is reasonably likely to materially affect, internal control over financial reporting"; and that "[m]anagement is currently evaluating the impact of CPA Global . . . on Clarivate's internal control over financial reporting."

26.     Appended as an exhibit to the 2020 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified that "[t]he [2020 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]" and that "[t]he information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

27.     On May 10, 2021, Clarivate filed an amendment on Form 10-K/A with the SEC, amending the 2020 10-K (the "2020 10-K/A").  For the year, the 2020 10-K/A reported amended and restated income from operations of $2.805 million, benefit for income taxes of $2,302, a net loss of $311.869 million, basic and diluted loss per share of $0.73, total current assets of $1.327 billion, other non-current assets of $47.944 million, total current liabilities of $1.569 billion, other non-current liabilities of $67.722 million, and total shareholders' equity of $9.28 billion.

28.     Additionally, the 2020 10-K/A contained the same statements as referenced in ¶ 23, *supra*, regarding Clarivate's acquisition of CPA Global.

29.     Moreover, although the 2020 10-K/A acknowledged that Clarivate had recently identified a material weakness in its internal control over financial reporting, it represented that this material weakness only related to its accounting for warrants.  For example, the 2020 10-K/A stated that the "material weakness [w]as a result of a lack of an effectively designed control over the evaluation of settlement features used to determine the classification of warrant instruments";

that "[n]otwithstanding this material weakness, management has concluded that our audited financial statements included in this [2020] 10-K/A are fairly stated in all material respects in accordance with GAAP for each of the periods presented herein"; that the Company's "remediation plan includes management designing a control at a sufficient level of precision over the evaluation of settlement features used to determine the classification of warrant instruments"; and that "excluding the internal control over financial reporting at . . . [*inter alia*] CPA Global . . . there was no change in Clarivate's internal control over financial reporting that materially affected, or is reasonably likely to materially affect, internal control over financial reporting."

30.     Appended as an exhibit to the 2020 10-K/A were substantively the same SOX certifications as referenced in ¶ 26, *supra*, signed by the Individual Defendants.

31.     Also on May 10, 2021, Clarivate filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2021 (the "1Q21 10-Q").  For the three months ended March 31, 2021, the 1Q21 10-Q reported loss from operations of $34.207 million, provision for income taxes of $3.569 million, a net loss of $23.954 million, basic and diluted loss per share of $0.04, total current assets of $1.414 billion, other non-current assets of $42.504 million, total current liabilities of $1.467 billion, other non-current liabilities of $62.143 million, and total shareholders' equity of $9.396 billion.

32.     Additionally, the 1Q21 10-Q contained substantively the same statements as referenced in ¶ 23, *supra*, regarding Clarivate's acquisition of CPA Global, while changing the aggregate consideration recorded in connection with the closing of that acquisition to $8,740,556, net of $99,043 cash acquired.

33.     While the 1Q21 10-Q acknowledged that Clarivate's disclosure controls and procedures were not effective, it again cabined that lack of effectiveness to "a material weakness

in our internal control over financial reporting related to a lack of an effectively designed control over the evaluation of settlement features used to determine the classification of warrant instruments, as disclosed in [the 2020 10-K/A]."

34.     The 1Q21 10-Q also continued to assure investors that "[o]ur remediation plan includes management designing a control at a sufficient level of precision over the evaluation of settlement features used to determine the classification of warrant instruments"; that, "[w]hile we believe that the[se] . . . actions will ultimately remediate the material weakness, we intend to continue to refine the control and test its effectiveness for a sufficient period of time prior to reaching any determination as to whether the material weakness has been remediated"; that "[n]otwithstanding the identified material weakness, management believes that the condensed consolidated financial statements included in this [1Q21] 10-Q present fairly, in all material respects, our financial position, results of operations, and cash flows as of and for the periods presented in accordance with U.S. GAAP."; and that "[t]here were no changes in our internal control over financial reporting that occurred during the period covered by this [1Q21] 10-Q that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

35.     Appended as an exhibit to the 1Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 26, *supra*, signed by the Individual Defendants.

36.     On July 29, 2021, Clarivate filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2021 (the "2Q21 10-Q").  For the six months ended June 30, 2021, the 2Q21 10-Q reported loss from operations of $45.959 million, provision for income taxes of $14.437 million, a net loss of $106.164 million, basic and diluted loss per share of $0.17, total current assets of $5.486 billion,

other non-current assets of $42.145 million, total current liabilities of $3.42 billion, other non-current liabilities of $62.149 million, and total shareholders' equity of $11.49 billion.

37.     Additionally, the 2Q21 10-Q contained substantively the same statements as referenced in ¶¶ 23 and 32, *supra*, regarding Clarivate's acquisition of CPA Global and the aggregate consideration recorded in connection with the closing of that acquisition, net of cash acquired.

38.     The 2Q21 10-Q also contained substantively the same statements as referenced in ¶¶ 33-34, *supra*, representing that the lack of effectiveness in Clarivate's financial controls was limited to the material weakness identified in the 2020 10-K/A, while assuring investors of the Company's remediation of that sole material weakness and the accuracy of the Company's financial position, results of operations, and cash flows as reported in the 2Q21 10-Q.

39.     Appended as an exhibit to the 2Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 26, *supra*, signed by the Individual Defendants.

40.     On October 28, 2021, Clarivate filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2021 (the "3Q21 10-Q").  For the nine months ended September 30, 2021, the 3Q21 10-Q reported loss from operations of $36.887 million, provision for income taxes of $18.016 million, a net loss of $82.852 million, basic and diluted loss per share of $0.17, total current assets of $5.189 billion, other non-current assets of $41.808 million, total current liabilities of $3.161 billion, other non-current liabilities of $58.332 million, and total shareholders' equity of $11.21 billion.

41.     Additionally, the 3Q21 10-Q contained substantively the same statements as referenced in ¶¶ 23 and 32, *supra*, regarding Clarivate's acquisition of CPA Global, while changing

the aggregate consideration recorded in connection with the closing of that acquisition to $8,740,324, net of $99,275 cash acquired.

42.     The 3Q21 10-Q also contained substantively the same statements as referenced in ¶ 24, *supra*, representing that Clarivate's disclosure controls and procedures ***were once again effective***, while assuring investors that "we designed and implemented a new control to evaluate settlement features used to determine the classification of any new warrant instruments"; that "[b]ased on the actions taken, as well as the evaluation of the design of the new control, and the fact that there have been no new warrant instruments issued recently nor in the foreseeable future, we determined that the material weakness has been remediated as of September 30, 2021"; and that "[t]here were no changes in our internal control over financial reporting that occurred during the period covered by [the 3Q21] 10-Q that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

43.     Appended as an exhibit to the 3Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 26, *supra*, signed by the Individual Defendants.

44.     The statements referenced in ¶¶ 22-43 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Clarivate maintained defective disclosure controls and procedures as a result of a material weakness in its internal control over financial reporting; (ii) the foregoing material weakness was not limited to how the Company accounted for warrants; (iii) as a result, Clarivate failed to properly account for an equity plan included in its acquisition of CPA Global; (iv) accordingly, the Company was reasonably likely to restate one or more of its previously issued financial statements following its

acquisition of CPA Global; and (v) as a result, the Company's public statements were materially

false and misleading at all relevant times.

## **The Truth Emerges**

45.    On December 27, 2021, Clarivate filed a current report on Form 8-K with the SEC,

disclosing the Company's need to restate the 2020 10-K (again), the 1Q21 10-Q, 2Q21 10-Q, and

3Q21 10-Q.  Specifically, that filing stated, in relevant part:

> On December 22, 2021, Clarivate . . . concluded that ***the financial statements previously issued as of and for the year ended December 31, 2020, and the quarterly periods ended March 31, 2021, June 30, 2021, and September 30, 2021, should no longer be relied upon because of an error in such financial statements***, as addressed in FASB ASC Topic 250, Accounting Changes and Error Corrections.

> ***The error relates to*** the treatment under U.S. generally accepted accounting principles ("GAAP") relating to ***an equity plan included in the CPA Global business combination which was consummated on October 1, 2020 ("the CPA Global Transaction"). In the affected financial statements, certain awards made by CPA Global under its equity plan were incorrectly included as part of the acquisition accounting for the CPA Global Transaction.***

> For the majority of these awards, the Company concluded that expenses should have been recognized as stock-based compensation charges over the vesting period from October 1, 2020 to October 1, 2021, with only a portion of the liability recorded as part of acquisition accounting. These expenses, of up to $185 million, will be recorded primarily over the periods ending December 31, 2020, March 31, 2021, June 30, 2021, and September 30, 2021. ***Accordingly, the Company's previously issued financial statements as of and for the periods ended December 31, 2020, March 31, 2021, June 30, 2021, and September 30, 2021, will need to be restated.*** The Company is in the process of preparing a second amendment to its Annual Report on Form 10-K for the year ended December 31, 2020 in order to provide restated financial statements and applicable footnote disclosures, along with revisions to information provided in Management's Discussion and Analysis and management's assessment of the effectiveness of internal control over financial reporting, including the impact on disclosure controls and procedures. The Company is also preparing amendments to its previously issued Form 10-Q filings for the periods ended March 31, 2021, June 30, 2021, and September 30, 2021.

> . . . . ***The Company anticipates that the restated financial information will affect GAAP income (loss) from operations, benefit (provision) for income taxes, net income (loss), earnings (loss) per share, current and non-current assets, current and non-current liabilities, and shareholders' equity.***

Management is assessing the effect of the restatements on the Company's internal control over financial reporting and its disclosure controls and procedures. ***The Company expects to report an additional material weakness following an analysis of the cause of these restatements.*** A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of a company's annual or interim financial statements will not be prevented or detected on a timely basis. The existence of a material weakness precludes a conclusion by management that the Company's disclosure controls and procedures and internal control over financial reporting are effective.

(Emphases added.)

46.     Later, also on December 27, 2021, an hour before market trading hours closed, *StreetInsider.com* published an article on Clarivate entitled "Clarivate Plc (CLVT) PT Lowered to $29 at Stifel on Accounting Error".  That article reported, in relevant part, the following:

Stifel analyst Shlomo Rosenbaum lowered the price target on Clarivate Plc (NYSE: CLVT) to $29.00 (from $32.00) . . . after the company issued an 8K stating it discovered an accounting error related to equity awards that CPA Global had issued under its equity plan.

"The timing of this discovery is poor, less than a month after the prior CFO left, though we are told that the items are not related, and this error was discovered in the last week," the analyst commented. "This error should not impact Revenue, Adjusted EBITDA or Adjusted FCF, but it is likely to impact the GAAP EBITDA and earnings, and the reported FCF."

47.     Following Clarivate's SEC filing and the *StreetInsider.com* article, Clarivate's ordinary share price fell $0.16 per share, or 0.65%, to close at $24.58 per share on December 27, 2021.  As the market continued to digest the SEC filing and *StreetInsider.com* article, Clarivate's ordinary share price fell an additional $1.70 per share, or 6.92%, to close at $22.88 per share on December 28, 2021—a total decline of $1.86 per share, or 7.52%, over two consecutive trading days.

48.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Clarivate securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

50.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Clarivate securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Clarivate or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

51.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

52.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

53.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Clarivate;

- whether the Individual Defendants caused Clarivate to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Clarivate securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

54.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

55.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Clarivate securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Clarivate securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

56. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

57. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

58. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

60.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Clarivate securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Clarivate securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

61.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Clarivate securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Clarivate's finances and business prospects.

62.     By virtue of their positions at Clarivate, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

63.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Clarivate, the Individual Defendants had knowledge of the details of Clarivate's internal affairs.

64.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Clarivate.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Clarivate's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Clarivate securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Clarivate's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Clarivate securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

65.     During the Class Period, Clarivate securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Clarivate securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Clarivate securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Clarivate securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

66.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

68.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69.     During the Class Period, the Individual Defendants participated in the operation and management of Clarivate, and conducted and participated, directly and indirectly, in the conduct of Clarivate's business affairs.  Because of their senior positions, they knew the adverse non-public information about Clarivate's misstatement of income and expenses and false financial statements.

70.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Clarivate's financial condition and results of operations, and to correct promptly any public statements issued by Clarivate which had become materially false or misleading.

71.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Clarivate disseminated in the marketplace during the Class Period concerning Clarivate's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Clarivate to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Clarivate within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Clarivate securities.

72.     Each of the Individual Defendants, therefore, acted as a controlling person of Clarivate.  By reason of their senior management positions and/or being directors of Clarivate, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Clarivate to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Clarivate and possessed the

power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

73.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Clarivate.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  January 24, 2022                    Respectfully submitted,

                                            POMERANTZ LLP

                                            */s/ Jeremy A. Lieberman*
                                            Jeremy A. Lieberman
                                            J. Alexander Hood II
                                            James M. LoPiano
                                            600 Third Avenue, 20th Floor
                                            New York, New York 10016
                                            Telephone: (212) 661-1100
                                            Facsimile: (212) 661-8665
                                            jalieberman@pomlaw.com
                                            ahood@pomlaw.com
                                            jlopiano@pomlaw.com

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

Tuesday, January 11, 2022

## Clarivate Plc (CLVT)

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1. I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.
2. I have reviewed a Complaint against Clarivate Plc ("Clarivate" or the "Company") and authorize the filing of a comparable complaint on my behalf.
3. I did not purchase or acquire Clarivate securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.
4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Clarivate securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.
5. The attached sheet lists all of my transactions in Clarivate securities during the Class Period as specified in the Complaint.
6. During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.
7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.
8. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Name**

**Print Name**

kevin parot

**Acquisitions**

**Configurable list (if none enter none)**

| Date Acquired | Number of Shares Acquired | Price per Share Acquired |
|---|---|---|
| 01/06/2021 | 117 | 29.74 |

**Sales**

**Documents & Message**



**Signature**



**Full Name**

kevin parot



**Clarivate Plc (CLVT)**                                                                 **Parot, Kevin**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
| --- | --- | --- | --- |
| Purchase | 6/1/2021 | 117 | $29.7479 |